# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**CHARLES J. EASLEY**                                                                 **PLAINTIFF**

v.                                                                           No. 3:15CV150-SA-SAA

**P. SMITH**                                                                           **DEFENDANT**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Charles J. Easley, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendant denied him meaningful access to the court and has retaliated against him for seeking access. The defendant has moved [37] for summary judgment. The plaintiff has also moved [34] for summary judgment, and the defendant has responded. The matter is ripe for resolution. For the reasons set forth below, the motion [37] by the defendant for summary judgment will be granted; the motion [34] by the plaintiff for summary judgment will be denied, and judgment will be entered for the defendant.

## Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of

proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## Undisputed Material Facts[1]

Easley is currently serving a fifteen year sentence for burglarizing an occupied residence in Santa Monica, California and stealing a guitar. Easley entered a plea agreement in which he pled no contest to first degree burglary. Easley was sentenced to four years on the burglary conviction, but prior felonies and prison sentences increased his total sentence to fifteen years. *See* Easley Criminal Court File Opinion February 26, 2015, Calif. App. Exhibit B at CCA-0041.

On or about March 28, 2014, Easley filed a notice of appeal from this conviction. See Easley Criminal Court File Opinion February 26, 2015 Calif. App. Exhibit B at CCA-0023. Easley was appointed an attorney to handle his appeal. On October 24, 2014, Easley's attorney, Athena Shudde, Esq., sent him a letter advising him that there was no legitimate ground for an appeal of his conviction. *See* A. Shudde October 24, 2014. Letter Exhibit C. Attorney Shudde filed a brief on October 28, 2014, that set forth the issues but did not argue any substantive basis to overturn the conviction. *See* Easley Criminal Court File *Wende* Brief Exhibit B at CCA-0027. The appellate brief was filed in accordance with *People v. Wende,* 25 Cal. 3d 436 (Calif. 1979) which allows an attorney to file a brief explaining the facts and issues with no substantive arguments after a conscientious examination of the record reveals that there is no arguable basis for the appeal. Under *Wende* the attorney is not required to include a statement of the attorney's efforts or conclusions but must file a brief stating facts and issues, after which the court must review the entire record before determining there is no arguable basis for appeal.

---

[1] The exhibits referenced in this memorandum opinion can be found in the defendant's motion for summary judgment.

Ms. Shudde advised Easley that "[i]f you have anything you would particularly like the court to look for, you may raise that issue in your brief . . . [s]ince the court will review the entire record, you do not have to do much more than let it know what issues you think I should have raised on your behalf." *See* A. Shudde October 24, 2014, Letter, Exhibit C. In her appellate brief, Attorney Shudde requested to be relieved as appointed counsel *but only* "if appellant so requests." *See* Easley Criminal Court File, *Wende* Brief, Exhibit B at CCA-0030. The appellate file does not reflect that Easley ever requested Attorney Shudde be relieved.

During the time Easley was appealing his criminal conviction, he had access to the law library a minimum of two hours a week to work on his criminal appeal. *See* P. Smith Declaration ¶ 4, Exhibit A. Easley first submitted a request for PLU status on November 3, 2014. *See* P. Smith Declaration ¶ 5, Exhibit A. Patricia Smith did not have the power to grant or deny Easley's PLU application because all such decisions are made by the prison library at TCCF or by the California Department of Corrections and Rehabilitation. *See* P. Smith Declaration ¶ 5, Exhibit A. Smith only became involved in Inmate Easley's request for PLU status after appealed the initial denial in the administrative grievance process, which occurred on February 11, 2015, the date he filed a CDCR 602 and 602A. *See* P. Smith Declaration ¶ 5, Exhibit A.

**Denial of Access to the Courts**

As the plaintiff had adequate access to the courts through counsel appointed to prosecute his criminal appeal – and as he has alleged no harm from limited access to a legal library – his claim for denial of access to the courts will be denied. Under *Bounds v. Smith*, 430 U.S. 817, 821 (1977), prisoners possess a constitutional right of access to courts, including having the "ability . . . to prepare and transmit a necessary legal document to court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996), quoting *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993), *cert. denied*, 510 U.S. 1123

(1994). The right of access to the courts is limited to allow prisoners opportunity to file nonfrivolous claims challenging their convictions or conditions of confinement. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). "Interference with a prisoner's right to access to the courts, such as delay, may result in a constitutional deprivation." *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (citations omitted).

However, "[a] denial-of-access-to-the-courts claim is not valid if a litigant's position is not prejudiced by the alleged violation." *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir. 1992), *cert. denied,* 504 U.S. 988 (1992), citing *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1988). It is only when a prisoner suffers some sort of actual prejudice or detriment from denial of access to the courts that the allegation becomes one of constitutional magnitude. *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993); *see Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987). To prove his claim, a plaintiff must show real detriment – a true denial of access – such as the loss of a motion, the loss of a right to commence, prosecute or appeal in a court, or substantial delay in obtaining a judicial determination in a proceeding. *See Oaks v. Wainwright*, 430 F.2d 241 (5th Cir. 1970).

An inmate's right of access to the courts may be fulfilled in ways other than access to a law library. *Lewis v. Casey*, 518 U.S. 343, 351,116 S.Ct. 2174, 2180 (1996). The right of access to the courts is not "an abstract, freestanding right to a law library or legal assistance[;] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id*. In this case, the plaintiff's access to the courts is through the counsel appointed him, "[f]or, once the State has provided a petitioner with an attorney in postconviction proceedings, it has provided him with the 'capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *Lamp v. Iowa*, 122 F.3d

1100, 1106 (8th Cir.1997), quoting *Lewis v. Casey*, 518 U.S. 343, 356 (1996); *see also Schrier v. Halford*, 60 F.3d 1309, 1313-1314 (8th Cir.1995) (having appointed counsel is one way in which state can shoulder its burden of assuring access to the courts); *Sanders v. Rockland County Correctional Facility*, No. 94 Civ. 3691, 1995 WL 479445 at *2 (S.D.N.Y. Aug. 14, 1995) ("By the appointment of counsel, plaintiff was afforded meaningful access to the courts in his trial.") When a state provides adequate legal assistance to a prisoner, the state has fulfilled its obligation to provide him access to the courts – and need not provide access to a law library. "Inmates are entitled to either adequate law libraries or adequate assistance from persons trained in the law, but certainly not both." *Meeks v. California Dep't of Corrections*, 1993 WL 330724 (9th Cir. Aug. 31, 1993), citing *Bounds*, 430 U.S. at 828.

The plaintiff had counsel appointed to prosecute an appeal of his criminal charges, and he also had two hours of access to the legal library each week. Counsel submitted a brief to the appellate court, which, under California law, had the duty to conduct a *de novo* review of the record to determine whether any appealable issues existed. Though Mr. Easley had the opportunity to terminate appellate counsel's services, he did not do so. As such, Mr. Easley had adequate access to the courts through his attorney, and his allegations to the contrary will be dismissed for failure to state a constitutional claim.

**Retaliation**

In his motion for summary judgment, Mr. Easley argues that Ms. Smith retaliated against him because he sought to amend a grievance to include a claim for money damages against another staff member (Ellington) and a claim that his criminal appeal had been dismissed while he was waiting to be placed on Priority Legal User ("PLU") status. Ms. Smith terminated the new grievance (which Mr. Easley wished to be filed as an amendment), noting that the ultimate issue was the same: Mr. Easley's

request to be placed on PLU status. Easley also argues that Ms. Smith retaliated against him by stating in a final report of her investigation of the matter that Easley had been represented by counsel during the direct appeal of his criminal conviction.

Prison officials may not retaliate against prisoners for exercising their constitutional rights. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). On the other hand, courts must view such claims with skepticism to keep from getting bogged down in every act of discipline prison officials impose. *Id*. The elements of a claim under a retaliation theory are the plaintiff's invocation of "a specific constitutional right," the defendant's intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, *i.e.*, "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995) (citations omitted ), *cert. denied*, 516 U.S. 1084, 116 S. Ct. 800, 133 L. Ed. 2d 747 (1996). A prisoner seeking to establish a retaliation claim must also show that the prison official's conduct was sufficiently adverse so that it would be capable of deterring a person of ordinary firmness from exercising his constitutional rights in the future. *Winding v. Grimes*, 4:08CV99-FKB, 2010 WL 706515 at 3 (S.D. Miss. Feb. 22, 2010); *citing Morris v. Powell*, 449 F.3d 682, 684–85 (5th Cir. 2006) at 685. A single incident involving a minor sanction is insufficient to prove retaliation. *Davis v. Kelly*, 2:10CV271-KS-MTP (citing *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999), 2:10CV271-KS-MTP, 2012 WL 3544865 *Id.*). Similarly, inconsequential (*de minimis*) acts by prison officials do not give rise to an actionable retaliation claim. *See Morris* at 685. Mere participation in the grievance process does not give rise to a claim under 42 U.S.C. § 1983. *Dehghani v. Vogelgesang*, 226 Fed.Appx. 404, 406 (5th Cir. 2007).

In this case, Mr. Easley must prove that he engaged in constitutionally protected activity (seeking redress for grievances), faced significant adverse consequences, and that such action was

taken "in an effort to chill [his] access to the courts or to punish [him] for having brought suit." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 (5th Cir.), *cert. denied*, 513 U.S. 926, 115 S. Ct. 312, 130 L. Ed. 2d 275 (1994); *see also Serio v. Members of Louisiana State Board of Pardons*, 821 F.2d 1112, 1114 (5th Cir.1987). The showing in such cases must be more than the prisoner's "personal belief that he is the victim of retaliation." *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).

The Fifth Circuit has made clear the dangers of permitting retaliation claims to proceed in the absence of factual allegations to support an inference of a retaliatory motive. In *Whittington v. Lynaugh*, 842 F.2d 818, 819 (5th Cir. 1988), the plaintiff, Daniel Johnson, had filed numerous lawsuits against administrators and staff within the Texas prison system. The defendants then denied Johnson's request to have his custody status upgraded, and Johnson alleged that the denial was in retaliation for filing his previous suits. *Id.* The Fifth Circuit rejected Johnson's claim – and explained why courts must insist upon specific factual allegations to support an inference of retaliation:

> If we were to hold that [Johnson] by his allegations in this case had established a case which was entitled to the full panoply of discovery, appointment of counsel, jury trial and the like, we would be establishing a proposition that would play havoc with every penal system in the country. Prison administrators must classify and move prisoners. It is a virtual truism that any prisoner who is the subject of an administrative decision that he does not like feels that he is being discriminated against for one reason or another, such as the past filing of a grievance, a complaint about food or a cellmate, or a prior complaint that he was not being treated equally with other prisoners. If we were to uphold the further pursuit of [Johnson's] complaint in this case we would be opening the door to every disgruntled prisoner denied the next level of trustyship, reassigned to another prison job, moved to another cell, [or] claiming his shoes were uncomfortable, to bring such a suit.

*Whittington v. Lynaugh*, 842 F.2d 818, 819 (5th Cir. 1988). Prisoners routinely file grievances against prison staff on an ongoing basis, for any number of reasons. As such, it is not

uncommon for a prisoner to file a grievance, then receive a Rule Violation Report sometime thereafter.  Thus, to avoid turning nearly every charge of prison rule violations against a prisoner into a claim of retaliation, courts insist upon additional allegations or evidence to substantiate a retaliation claim, such as prison staff issuing threats of disciplinary action if an inmate files further grievances, staff members pulling an inmate aside to threaten him, members of prison staff perpetrating unprovoked acts of violence against an inmate, or prison staff members wholly fabricating charges of prison rule violations against an inmate.  *See Decker v. McDonald*, 2010 WL 1424322 (E.D. Tex. 2010) (Magistrate Judge's Report and Recommendation) (unpublished), adopted by the District Court, 2010 WL 1424292 (E.D. Tex.) (unpublished).

Easley engaged in constitutionally protected activity (seeking redress for grievances), but he did not face a significant adverse consequence.  Ms. Smith merely rejected a second grievance that she perceived to be the same as the first (though Mr. Easley argues that he was actually trying to amend the first grievance ).  As discussed above, she stated (correctly) during the grievance process that Easley was represented by counsel on direct appeal (and thus did not qualify for Priority Legal User status).  Mr. Easley then filed a new, separate, grievance challenging Ms. Smith's handling of the previous grievance, though it appears the process for challenging the resolution of a grievance is through the appeals process for the original grievance, not by filing a new grievance.  In any event, Ms. Smith's participation in the events of this case is limited to her role as a reviewer during the grievance process, and a § 1983 plaintiff cannot proceed against a prison official based solely on the official's participation in the prison grievance process.  *Dehghani v. Vogelgesang*, 226 Fed.Appx. 404, 406 (5th Cir. 2007).  In addition, "[t]here is no constitutionally protected interest in the processing of an inmate's grievances." *Bell v. Woods*, 382 F. App'x 391, 393 (5th Cir. 2010) (citing *Geiger v. Jowers,* 404 F.3d 371,

373-74 (5th Cir.2005). For these reasons, the plaintiff's allegations do not establish a claim under § 1983 for retaliation, and those allegations will be dismissed.

## Conclusion

For the reasons set forth above, the motion [34] by the plaintiff for summary judgment will be denied; the defendant's motion [37] for summary judgment will be granted, and judgment will be entered for the defendants. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 23rd day of November, 2016.

 /s/ Sharion Aycock
**U.S. DISTRICT JUDGE**